UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:08-CR-163 JCM (GWF) |
|---|---|
| Plaintiff(s), | ORDER |
| v. | |
| ALFREDO FLORES, et al., | |
| Defendant(s). | |

Presently before the court is petitioner Alfredo Flores' motion to vacate, amend, or correct sentence pursuant to 28 U.S.C. § 2255. (ECF No. 705). The government filed a response (ECF No. 732). Petitioner did not file a reply, and the time for doing so has since passed.

Also before the court is petitioner's "motion for review" of his § 2255 motion. (ECF No. 736).

**I.    Facts**

This case arose from a Bureau of Alcohol, Tobacco, and Firearms ("ATF") sting operation targeting employees of a tattoo shop (and their affiliates) that the ATF believed were engaged in drug trafficking. The operation resulted in criminal convictions of, among others, petitioner, Christopher Sangalang, and Deandre Patton (collectively, "defendants"). Evidence presented at trial supports the following factual recitation.

Petitioner had a conversation with an undercover agent, Gomez, wherein petitioner stated he had a "crew" and wanted to commit armed robberies. On April 18, 2008, ATF Agent McCarthy met with Flores in the back office of the tattoo shop and purchased 2 ounces of methamphetamine. Thereafter, McCarthy introduced Flores to Bayless, another undercover agent, and left them to talk.

**James C. Mahan**
**U.S. District Judge**

Bayless passed himself off as a courier who trafficked cocaine from Las Vegas to Chicago for a drug cartel. Bayless told petitioner that he had coordinated a sale between another individual and the cartel during which the individual shorted the cartel. Bayless said the cartel told him that he owed them for the loss. Bayless suggested that the cartel's actions angered him, and he was looking for others to rob a cartel stash house with him and share the loot (which was supposedly money and cocaine).

Sangalang and petitioner planned the robbery. Petitioner discussed the planned murder of the two armed men guarding the stash house with Patton.

On May 15, 2008, the criminal defendants and ATF agents met at the tattoo shop. The plan was to drive to a warehouse located 2.2 miles away and pick up vans to drive to the robberies. The defendants drove in separate cars from undercover agents. The undercover agents purposefully drove ahead of the defendants so that the defendants could "choose to follow or they [could] choose to turn off." (ECF No. 527 at 165).

After the defendants parked next to the vans supposedly meant for the robbery, a SWAT team converged on the defendants. Officers seized the following items from defendants: five firearms, more than 150 rounds of ammunition, two packs of zip ties, a police scanner, black latex gloves, a tactical weapon vest, a fake badge, and a ski mask.

On April 2, 2010, a jury found petitioner guilty of one count of conspiracy to interfere with commerce by robbery ("conspiracy to commit Hobbs Act robbery"), one count of conspiracy to possess with intent to distribute cocaine, and one count of use of a firearm during and in relation to a crime of violence or a drug trafficking crime under 18 U.S.C. § 924(c). (ECF No. 486).

On June 15, 2011, the court sentenced petitioner to 120 months imprisonment for the conspiracy to commit Hobbs Act robbery and the conspiracy to possess with intent to distribute cocaine convictions, to run concurrent. (ECF No. 607). The court sentenced petitioner to 60 months imprisonment for the § 924(c) conviction, which by law had to run consecutively to the other convictions. *Id.* Therefore, petitioner received a combined sentence of 180 months imprisonment.

James C. Mahan
U.S. District Judge

Petitioner timely appealed his conviction and sentence. On June 26, 2014, the Ninth Circuit affirmed. (ECF No. 663).

On June 26, 2015, in *Johnson v. United States*, 135 S.Ct. 2551 (2015), the Supreme Court held that imposing an increased sentence under the residual clause of the Armed Career Criminal Act ("ACCA") violates due process. On June 24, 2016, petitioner filed his motion to vacate, seeking habeas relief under *Johnson*. (ECF No. 705).

**II.     Legal Standard**

Federal prisoners "may move . . . to vacate, set aside or correct [their] sentence" if the court imposed the sentence "in violation of the Constitution or laws of the United States . . . ." 28 U.S.C. § 2255(a). Relief pursuant to § 2255 should be granted only where "a fundamental defect" caused "a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 345 (1974); *see also Hill v. United States*, 368 U.S. 424, 428 (1962).

Limitations on § 2255 motions are based on the fact that the movant "already has had a fair opportunity to present his federal claims to a federal forum," whether or not he took advantage of the opportunity. *United States v. Frady*, 456 U.S. 152, 164 (1982). Section 2255 "is not designed to provide criminal defendants multiple opportunities to challenge their sentence." *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

**III.    Discussion**

*a. Whether petitioner is eligible to seek relief under Johnson*

On April 18, 2016, the Supreme Court held that *Johnson* announced a new substantive rule that has retroactive effect in cases on collateral review. *Welch v. United States*, 136 S.Ct. 1257, 1267 (2016). Petitioner filed his motion to vacate on June 24, 2016, within one year of the court's decision in *Johnson*. Therefore, petitioner is eligible to apply for habeas relief pursuant to the Supreme Court's decision in *Johnson*. *See* 28 U.S.C. § 2255(f) ("a 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of– . . . (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . .").

The government argues that petitioner "procedurally defaulted on his claim by failing to raise it on direct appeal." (ECF No. 732). The government therefore contends that defendant needs to show cause and actual prejudice. *Id.*

Multiple other courts in this district have rejected the government's procedural bar arguments in habeas cases post-*Johnson*. *See United States v. Ebron*, no. 2:12-cr-00072-APG-CWH-2, 2017 WL 3337260, at *2 (D. Nev. Aug. 3, 2017); *United States v. Hunter*, 2:12-cr-00132-JAD-CWH-1, 2017 WL 3159985, at *2 (D. Nev. July 25, 2017); *United States v. Avery*, 3:02-cr-00113-LRH-VPC, 2017 WL 29667, at *5 (D. Nev. Jan. 3, 2017). The court holds that petitioner is not procedurally barred from bringing his claims. *See Ebron*, 2017 WL 3337260, at *2; *Hunter*, 2017 WL 3159985, at *2.

> *b. Whether petitioner's § 924(c) conviction violates the Constitution's guarantees of due process and the right to trial by jury*

Petitioner argues that the predicate offense underlying his § 924(c) conviction is his conviction for conspiracy to commit Hobbs Act robbery. (ECF No. 717). Petitioner asserts that conspiracy to commit Hobbs Act robbery cannot qualify as a predicate "crime of violence" for purposes of a § 924(c) conviction post-*Johnson*. *Id.*

The parties categorize this dispute as one concerning "instructional error." Therefore, the court will first consider whether a conviction under § 924(c) that is predicated on conspiracy to commit Hobbs Act robbery is constitutionally untenable. *See Morris v. Woodford*, 273 F.3d 826, 833 (9th Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam)) ("When considering an allegedly erroneous jury instruction in a habeas proceeding, [courts] first consider whether the error in the challenged instruction, if any, amounted to 'constitutional error.'").

> *i. Whether conspiracy to commit Hobbs Act robbery qualifies as a predicate crime of violence under § 924(c)(3)*

Petitioner maintains that his § 924(c) conviction relies on the statute's residual clause, which is unconstitutional in light of *Johnson* and the Ninth Circuit's decision in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). (ECF No. 705). The government responds that the holdings in *Johnson* and *Dimaya v. Lynch* are inapplicable to the case at bar, which arises out of a conviction pursuant to § 924(c). (ECF No. 732).

James C. Mahan
U.S. District Judge

### A. Whether § 924(c)'s residual clause is unconstitutional in light of Johnson and Dimaya

In *Johnson*, the Supreme Court considered whether the ACCA violates due process. *See generally* 135 S.Ct. at 2555. Under the ACCA, "a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a 'violent felony' a term defined to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Id.* (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008). The inclusion is commonly referred to as the ACCA's "residual clause."

The Court in *Johnson* highlighted two concerns regarding the ACCA's residual clause. First, the "ordinary case" inquiry mandated by the ACCA's statutory text created "grave uncertainty about how to estimate the risk posed by a crime." *Id.* at 2557. Second, the residual clause left unclear what level of risk amounted to a "violent felony." *Id.* at 2561. The court held the residual clause within the ACCA was void for vagueness, as "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* at 2558.

On April 17, 2018, the Court extended the holding in *Johnson* beyond the ACCA. *See Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) ("*Dimaya*"). In *Dimaya*, the Court considered whether the Immigration and Naturalization Act's ("INA") residual clause violated due process. *See generally id.*

The INA "renders deportable any alien convicted of an 'aggravated felony' after entering the United States." *Id.* at 1210. Numerous types of offenses can qualify as an aggravated felony under the INA, which often cross-references federal criminal statutes for definitions. *Id.* at 1211. One such cross-reference is to 18 U.SC. § 16 and "crime[s] of violence." *Id.* Section 16 defines a crime of violence as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The former clause is often referred to as the elements clause, and the latter clause is often referred to as the residual clause.

The Court in *Dimaya* reiterated *Johnson's* two concerns regarding the ACCA's residual clause, noting that they applied equally to § 16. *Id.* at 1216 ("In sum, § 16(b) has the same 'two features' that 'conspired to make ACCA's residual clause unconstitutionally vague.'") (alterations omitted). "§ 16(b) produces . . . 'more unpredictability and arbitrariness than the Due Process Clause tolerates.'" *Id.*

Here, the statutory language of § 924(c)(3) mirrors the language of 18 U.S.C. § 16, with the lone exception of an additional comma in § 16. Therefore, the Supreme Court's holding in *Dimaya* that § 16's residual clause is void for vagueness renders § 924(c)'s residual clause void for vagueness. Accordingly, petitioner's conviction cannot rest on the residual clause of § 924(c).

The government's arguments in this case largely track the government's arguments made to the Supreme Court in *Dimaya*.[1] Here, the government's discussion section of its brief focuses on three main concepts: distinctions between the ACCA and § 924; the impact on other statutes if the court holds that § 924(c)'s residual clause is void for vagueness; and the relevance of the Ninth Circuit's decision in *Dimaya v. Lynch*. (ECF No. 732).

The government asserts that "[s]ection 924(c)(3)(B) is drafted more precisely than the ACCA's residual clause," which makes the Court's holding in *Johnson* inapplicable to the facts of this case. (ECF No. 732 at 9). The government contends that § 924(c)(3)(B), unlike the ACCA, does not go beyond the elements of the offense to consider potential extra-offense conduct. *Id.* at 11. The dissent in *Dimaya* articulated this same theory in support of upholding the INA's residual clause in the face of a constitutional challenge. *See id.* at 1236-40 (Roberts, C.J., dissenting). However, the Court in *Dimaya* referred to this argument, among others, as a "distinction without a difference." *Id.* at 1218. In the majority's view, the ACCA's residual clause and § 16(b)'s residual clause asked courts to make the same nebulous inquiry into the riskiness of a crime. *See id* at 1220 ("The upshot is that the phrase 'in the course of' makes no difference as to either outcome or clarity.").

---

[1] The government filed its response brief in this matter before the court issued its decision in *Dimaya*.

Another argument that the government espouses is that § 924(c) does not contain the same list of enumerated crimes as the ACCA's residual clause. (ECF No. 732 at 15-16). The Court in *Dimaya* noted that although the "confusing list of exemplar crimes" in the ACCA did not aid in interpreting the statutory language, the residual clause's constitutionality did not turn on the existence of the enumerated offenses in the text. *See* 138 S.Ct. at 1221 ("To say that the ACCA's listed crimes failed to resolve the residual clause's vagueness is hardly to say that they caused the problem. Had they done so, *Johnson* would not have needed to strike down the clause [in its entirety]."). Rather, the Court in *Johnson* held that the vagueness inherent in the ACCA's residual clause stemmed from "the ordinary case requirement and a fuzzy risk standard." *See id.* These ill-defined inquiries form the foundation of § 924(c)(3)'s residual clause just as they formed the foundation of the ACCA and the INA's residual clauses.

Next, the government suggests that holding the residual clause in § 924(c) to be unconstitutional would call into doubt the constitutionality of many other statutes.[2] (ECF No. 732 at 18). The Court in *Dimaya* was not swayed by this foreboding argument. *See id.* at 1214 ("The Court [in *Johnson*] emphasized that [the uncertainty as to the threshold level of risk] feature [of the ACCA] alone would not have violated the void-for-vagueness doctrine. Many perfectly constitutional statutes use imprecise terms like 'serious potential risk' (as in ACCA's residual clause) or 'substantial risk' (as in § 16's). The problem came from layering such a standard on top of the requisite "ordinary case" inquiry.").

The government argues that courts have not had similar difficulty in construing § 924(c)(3)(B) as they did when construing the ACCA's residual clause. (ECF No. 732 at 9). Faced with a similar argument in *Dimaya*, the Court explained why the ACCA had resulted in a plethora of conflicting caselaw while § 16(b) had not ostensibly caused the Court "comparable difficulties." *See id.* at 1223 (noting that the Court had received a number of petitions for certiorari in § 16(b) cases that were summarily vacated and remanded after rulings on similar issues in the ACCA context). The Court concluded that its experience with the ACCA "only supports the conclusion that § 16(b) is too vague." *See id.* at 1223. This court holds that the same logic applies

---

[2] The government styles its argument as an explanation of the Court's holding in *Johnson*. *See* (ECF No. 732 at 18).

**James C. Mahan**
**U.S. District Judge**

- 7 -

to § 924(c). *See id.* at 1223 ("The government would condemn us to repeat the past—to rerun the of ACCA tape, as though we remembered nothing from its first showing. But why should we disregard a lesson so hard learned?").

The government also contends that "[The Ninth Circuit's decision in] *Dimaya* [*v. Lynch*], by its explicit terms, does not apply to section 924(c)." (ECF No. 732 at 18). However, in light of the Supreme Court's holding in *Dimaya*, there can be no doubt that § 924(c)'s residual clause suffers from the same constitutional deficiencies that caused the Court to strike down the nearly identical residual clause in the INA.

### B. Whether the conviction can be sustained under the force clause

The Ninth Circuit has not yet decided whether conspiracy to commit Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s force clause.[3] To qualify as a crime of violence under the force clause, the predicate offense must contain as "an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

A conviction for conspiracy to commit Hobbs Act robbery requires proof of the following elements: "(1) two or more people agreed to commit a robbery or extortion of the type discussed in the Hobbs Act; (2) the defendant had knowledge of the conspiratorial goal; and (3) the defendant voluntarily participated in trying to accomplish the conspiratorial goal." *United States v. Si*, 343 F.3d 1116, 1123-24 (9th Cir. 2003). As the term is used in the Hobbs Act, robbery means the taking of another's property "by means of actual or threatened force." 18 U.S.C. § 1951(b)(1).

Conspiracy to commit Hobbs Act robbery requires no more than an agreement to commit robbery. As Judge Dorsey held in *Hunter*,

> A defendant can enter this agreement without actually 'using, attempting to use, or threatening to use physical force against the person or property of another . . . . For example, he could be convicted based on an agreement to commit the robbery with identities concealed by ski masks and purchasing a ski mask for the robbery. By entering into that agreement and purchasing the mask, the defendant would be guilty of conspiracy to commit Hobbs Act

---

[3] In 2016, the Ninth Circuit issued an unpublished decision holding that Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s force clause. *See United States v. Howard*, 2016 WL 2961978, at *1 (9th Cir. May 23, 2016).

James C. Mahan
U.S. District Judge

> robbery, but he would not have actually used, threatened to use, or attempted to use force against anyone.

*Hunter*, 2017 WL 3159985, at *5.

As conspiracy to commit Hobbs Act robbery does not contain an element requiring proof of the use or attempted use of physical force, it cannot qualify as a crime of violence under the force clause. *See Hunter*, 2017 WL 3159985, at *5.

### ii. Whether any instructional error was harmless

The government argues in the alternative that petitioner's conviction is supported by "overwhelming evidence" that he possessed a firearm in relation to a drug trafficking crime, and therefore any instructional error at trial was harmless. (ECF No. 732). Although the court agrees that the government presented evidence supporting each element of the offense of possession of a firearm in connection with the drug trafficking conspiracy, the court holds that the instructional error in this case had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), and petitioner's § 924(c) conviction must therefore be reversed.

"A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) ("*Hedgpeth*"); *see also Yates v. United States*, 354 U.S. 298 (1957) (holding that a verdict may be set aside "where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."). In *Hedgpeth*, the Supreme Court held that such errors are subject to harmless inquiry analysis, and are not structural errors requiring automatic reversal. *Id.* at 58, 62. Reviewing courts "should ask whether the law in the instructions 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 58 (citing *Brecht*, 507 U.S. at 623); *see United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) (holding that *Brecht* harmless error review, as opposed to *Chapman* review, applies in the § 2255 context).

In *Kotteakos v. United States*, 328 U.S. 750 (1946), the Supreme Court explained the role of reviewing courts when considering defective jury instructions:

> [I]t is not the [reviewing] court's function to determine guilt or innocence. Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out. [Reviewing] judges cannot escape such impressions. But they may not make them sole criteria for reversal or affirmance. Those judgments are exclusively for the jury, given always the necessary minimum evidence legally sufficient to sustain the conviction unaffected by the error.
>
> But this does not mean that the [reviewing] court can escape altogether taking account of the outcome. To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum. In criminal cases that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. *It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision.* The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.
>
> This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record. . . .
>
> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclusive that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phrase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, *or if one is left in grave doubt*, the conviction cannot stand.

*Id.* at 763-65 (emphasis added).

Here, the indictment charged petitioner in count three with use of a firearm during and in relation to a crime of violence or a drug trafficking crime. (ECF No. 1). The court instructed the jury, without objection, that it could convict petitioner if it found beyond a reasonable doubt that petitioner possessed a firearm during and in relation to either the Hobbs Act conspiracy or the drug trafficking conspiracy. (ECF Nos. 492, 530). The court did not tailor a unanimity instruction to

this particular count.[4]  Further, the jury returned a verdict of "guilty" on count three without specifying whether the jury unanimously agreed that petitioner possessed a firearm in relation to the Hobbs Act conspiracy, the drug trafficking conspiracy, or both.  (ECF No. 486 at 4).

On these facts, the jury could have unanimously agreed that petitioner possessed a firearm in relation to the Hobbs Act conspiracy but not the drug trafficking conspiracy.[5]  A conviction based on § 924(c)'s crime of violence language would violate defendant's Fifth Amendment right to due process in this case.  *See Discussion section b(i), supra*.  Therefore, petitioner presents a compelling argument that the instructions "had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth*, 555 U.S. at 58.

The government's sole argument regarding the harmless error analysis is that the evidence in this case was overwhelming.  *See* (ECF No. 732 at 5) ("Overwhelming evidence showed that Flores conspired to possess cocaine with intent to distribute it, and that he possessed a firearm during and in relation to that crime. Thus even if there had been any error in instructing the jury that it could predicate the § 924(c) conviction on the Hobbs Act conspiracy, that error could not have had a 'substantial and injurious effect or influence in determining the jury's verdict,' *Brecht*, 507 U.S. at 623 (1993) and Flores would not be entitled to relief.").  This argument finds roots in the Ninth Circuit's opinion on remand in *Pulido v. Chrones*, 629 F.3d 1007 (9th Cir. 2010) ("*Pulido*").

In *Pulido*, the defendant's conviction was based on a constitutionally erroneous jury instruction that allowed the government to convict defendant of felony murder even if he aided and abetted a robbery after the murder had occurred (the court referred to this as the "late-joiner

---

[4] "Of course, jurors cannot be instructed that a defendant can be convicted of an offense if he committed, for example, crime A or crime B, unless they are also instructed that there must be unanimous agreement on which crime it was." *United States v. Newson*, 534 Fed. App'x 604, 605 (9th Cir. 2013) (citing *Richardson v. United States*, 526 U.S. 813, 818-20 (1999); *United States v. Anguiano*, 873 F.2d 1314, 1319-20 (9th Cir. 1989)).  Although petitioner did not appeal or collaterally challenge the lack of a unanimity instruction in this case, the lack of a unanimity instruction is relevant in determining whether petitioner's conviction rested in whole or in part on an unconstitutional application of § 924(c).

[5] Whether the weight of the evidence presented at trial would support this conclusion is not the relevant inquiry. *See Kotteakos*, 328 U.S. at 763 ("[I]t is not the [reviewing] court's function to determine guilt or innocence.  Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out.").

James C. Mahan
U.S. District Judge

theory"). 629 F.3d at 1011-12 (describing defendant's argument that the felony-murder instruction was constitutionally erroneous), 1020 (noting that the jury verdict "was not substantially swayed by the instructional errors") (internal quotation omitted).

On remand from the Supreme Court, the parties did not dispute, and the court did not address, whether the instruction was constitutionally defective. *Id.* at 1012. Instead, the court held that the error was harmless because (1) the jury's special circumstance findings demonstrated that it rejected defendant's late-joinder theory, *id.* at 1016-17, (2) the jury's questions during deliberation did not demonstrate that the erroneous instruction prejudiced defendant, *id.* at 1017-18, and (3) the evidence at trial weighed against defendant's theory of the case, *id.* at 1019. The court held that "the judgment was not substantially swayed by the instructional errors," and therefore any error in the jury instructions was harmless. *Id.* at 1019-20 (internal quotation omitted).

In this case, the government provides no evidence that the jurors based petitioner's § 924(c) conviction on the predicate drug trafficking offense. Here, unlike *Pulido*, the government has not pointed to any evidence in the trial transcript or otherwise demonstrating that the instructional error did not prejudice the jury's determination of guilt as to the § 924(c) charge. Also unlike *Pulido*, this case did not contain special circumstance findings or jury questions during deliberation. These differences render petitioner's motion substantially distinguishable from *Pulido*.

As the Supreme Court held in *Kotteakos* and *Hedgpeth*, the appropriate inquiry centers on whether the instructional error substantially affected the jurors' journey to the verdict, and not whether the evidence appears overwhelming in the eyes of a reviewing court. *See Hedgpeth*, 555 U.S. at 531; *Kotteakos*, 328 U.S. at 753-76; *but see Pulido*, 629 F.3d at 1019 (holding, *inter alia*, that evidence of defendant's guilt presented at trial is a factor in determining whether an instructional error prejudiced defendant). After reviewing the briefing on this petition and the evidence presented at the underlying criminal trial, the court is "left in grave doubt" as to whether the instructions in this case had a substantial and injurious effect or influence on the verdict. *See Kotteakos*, 328 U.S. at 765, 66. Put simply, petitioner has presented evidence that the jury could have relied on a constitutionally-impermissible basis for conviction, and the government has not

provided any evidence that the jury relied on the constitutionally-permissible basis for conviction. Therefore, under existing Supreme Court precedent, petitioner's conviction cannot stand. *See id.*

The government asks the court in essence to direct a verdict in its favor. Although the evidence in this case may have been "weighty," to direct a verdict for the prosecution on these grounds would violate defendant's Sixth Amendment right to a jury trial. *See Standefer v. United States*, 447 U.S. 10, 22 (1980) ("[the government] is prohibited from being granted a directed verdict . . . no matter how clear the evidence in support of guilt"); *United States v. Regan*, 232 U.S. 37 (1914) ("no verdict against [a criminal defendant] can be directed").

Because the court possesses grave doubt as to whether the jury based petitioner's conviction on an unconstitutional application of § 924(c), the court must vacate petitioner's § 924(c) conviction. *See Kotteakos*, 328 U.S. at 766.

        *iii.*    *Summary*

Conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under § 924(c)'s force clause. Because the only remaining clause that petitioner's § 924(c) conviction could qualify under is void for vagueness, petitioner's § 924(c) conviction cannot rely on the Hobbs Act robbery conspiracy charge as the predicate offense. As the jury instructions invited the jury to convict petitioner on count three based on the conspiracy to commit Hobbs Act robbery charge, and the court has grave doubt as to whether the jury instructions substantially influenced the verdict, petitioner's conviction violates his right to a trial by jury. The court will vacate petitioner's conviction under § 924(c) and corresponding 60-month sentence.

**IV.**    **Conclusion**

The court holds that petitioner's § 924(c) conviction violates due process in light of the Supreme Court's holdings in *Johnson* and *Dimaya*. Therefore, resentencing is appropriate in this case.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that petitioner's motion to vacate (ECF No. 705) be, and the same hereby is, GRANTED.

**James C. Mahan**
**U.S. District Judge**

- 13 -

IT IS FURTHER ORDERED that petitioner's motion for review (ECF No. 736) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that a resentencing hearing will be held on July 17, 2018, 2018, at 10:00 am in Courtroom 6A of the Lloyd D. George Courthouse in Las Vegas, Nevada.

IT IS FURTHER ORDERED that petitioner shall prepare and file a resentencing memorandum by July 3, 2018, and the government shall prepare and file a resentencing memorandum by July 10, 2018.

DATED June 5, 2018.

_____
UNITED STATES DISTRICT JUDGE